## MARLBOROUGH BRANCH RAILROAD COMPANY *vs.* WINTHROP ARNOLD.

A book containing subscriptions to the stock of a corporation for as many shares as the charter required should be subscribed for before any assessment was laid, which came into the possession of the corporation immediately on its organization, which has been always treated by them as showing the number of shares subscribed for, and on the faith of which the directors have laid an assessment, is *prima facie* evidence that the number of shares requisite for an assessment had been subscribed for.

ACTION OF CONTRACT on the Rev. Sts. *c.* 39, § 53, to recover an unpaid balance of assessments of $80 a share on shares in the plaintiffs' capital stock, for which the defendant was alleged to have subscribed by signing an agreement, headed " Marlborough Branch Railroad Company — Articles of Subscription to Capital Stock," which, after reciting the incorporation of the plaintiffs by *St.* 1852, *c.* 162, (fixing their capital stock at eight hundred shares of not more than $100 each,) and the selection of a location, proceeded thus: " And whereas it is deemed important that the meeting be called by the corporation to organize such corporation, and that the book of subscription be opened immediately, so that the work may proceed without delay. Now therefore we the undersigned do hereby severally agree to take the number of shares in the capital stock of such corporation set against our respective signatures, and promise to pay the assessments that shall be levied thereon, not exceeding one hundred dollars per share, upon the following conditions," one of which was, " that not more than one dollar per share shall be assessed upon the capital stock until eight hundred dollars shall be subscribed."

The answer put in issue all the allegations in the declaration and particularly alleged that certain subscriptions, purporting by the agreement relied on to have been made, were not genuine.

At the trial in the court of common pleas before *Sanger*, J., the plaintiffs put in evidence a book containing the original agreement of subscription, and offered evidence tending to show that this book was at the meeting for the organization of the

corporation, and was the only subscription list there, and was then treated, acted upon and accepted as the subscription book of the corporation, and had ever since been so treated and kept in the possession of the treasurer of the company; that, at the time of the laying of the first assessment, the directors examined this subscription list to see if it was full, and found there were eight hundred shares subscribed for, and thereupon laid the first assessment.

There was no evidence to show that said list was ever canvassed by the directors as a board and declared full, or that it was before the board at the time of laying the assessments, or that there was any vote of the directors declaring it full, or any vote apportioning and allotting the stock according to this or any other subscription list. And this paper had never been treated or acted upon by the corporation or its officers as subsisting after the organization of the corporation.

It appeared that the defendant subscribed to this book for three shares of the stock before the acceptance of the charter or any organization of the plaintiffs as a corporation.

There was no proof that the defendant or any considerable part of the other subscribers attended or took part in the organization, or in any subsequent action of the corporation, or ever recognized this subscription list in any way as a book of the corporation.

The plaintiffs asked the court to rule that this book of subscriptions, thus treated, acted upon and kept, furnished *prima facie* evidence that at the time of the laying of the first assessment eight hundred shares had been subscribed for *bona fide.* But the court refused so to rule; and ruled that the plaintiffs must in the first instance, as part of their case, prove by other evidence that the signatures to the book were genuine, which the defendant had specified in the answer. The plaintiffs became nonsuit, and alleged exceptions.

*D. Thaxter*, for the plaintiffs.

*G. Bemis*, for the defendant. The paper offered by the plaintiffs, not being a record of the corporation, nor a contract made or purporting to be made with the corporation, nor ratified or in

any way recognized by the defendant after organization, nor a document which the corporation themselves have ever officially recognized as a full stock list, is no proof of its own genuineness. *Dana* v. *Underwood*, 19 Pick. 99. *Howe* v. *Peabody*, 2 Gray, 556. Angell & Ames on Corp. § 679. Grant on Corp. 318. 1 Greenl. Ev. § 493. Even if a corporation record, it was not competent for the purpose offered. *Salem Milldam* v. *Ropes*, 9 Pick. 187. *Stoneham Branch Railroad* v. *Gould*, 2 Gray, 277. *Cabot & West Springfield Bridge* v. *Chapin*, 6 Cush. 50. *Lechmere Bank* v. *Boynton*, 11 Cush. 369. *Central Turnpike* v. *Valentine*, 10 Pick. 142. *People's Ferry* v. *Balch*, 8 Gray, 303.

MERRICK, J.* The instructions asked for by the plaintiffs should, under the circumstances stated in the bill of exceptions, have been given to the jury. By the provisions of the charter of the corporation, no assessment could be laid upon the shares of its capital stock until at least eight hundred shares had been subscribed for. But it appeared by the book of subscriptions, of which the corporation immediately after its organization became possessed, that that number of shares had been taken or agreed to be taken by different individuals. These subscriptions were all recognized and accepted by the company as valid agreements on the part of the several subscribers to take the number of shares written against their respective signatures. This book was retained by the corporation, and was always afterwards treated by it as the exhibition and proof of the number of shares of its capital stock, which had actually been taken and subscribed for. The company had a right so to consider it and to make it the basis of further action ; for subscriptions for shares, though made before the organization of the corporation, may become obligatory upon the parties, if made after the act of incorporation has been obtained. And in such case the subscription book is competent and proper evidence to be submitted to the jury, and, if not countervailed by any other proof, will be held to be conclusive of the liability of the subscrib-

---

* This case was decided, and the remaining cases of this term were argued, at Boston in February 1858, before all the judges except *Thomas*, J.

ers. *Lexington & West Cambridge Railroad.* v. *Chandler*, 13 Met. 311.

The corporation being in possession of the subscription book, and the several subscriptions upon it purporting to be, and apparently being, genuine and authentic, it afforded a justification to its officers in proceeding to lay assessments upon the shares of the capital stock. The imposition of such an assessment is an act performed by the directors in the discharge of their official duty; and it is therefore, in the absence of opposing evidence, to be considered as justly and rightly done. 1 Phil. Ev. (4th Amer. ed.) 469 & notes. But this could be right only upon the assumption that the subscriptions for stock upon which they acted were real and genuine; and therefore this effect is to be allowed and given to them, until something is shown to create a doubt or bring the validity of the subscriptions into question. For these reasons the book which was produced by the plaintiff should, in connection with the circumstances proved in relation to it have been considered *prima facie* evidence of the amount and number of shares of stock subscribed 'for; and because the presiding judge declined to instruct the jury to that effect, the nonsuit must be set aside, and a

*New trial granted.*